UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA ESTELLE G., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Case No.: 21-cv-00674-W-KSC <br><br> **REPORT AND RECOMMENDATION REGARDING JOINT MOTION FOR JUDICIAL REVIEW** <br><br> **[Doc. No. 15]** |

On April 15, 2021, plaintiff Virginia Estelle G. ("plaintiff") filed a complaint challenging defendant's ("defendant" or the "Commissioner") denial of her application for disability benefits. Doc. No. 1. Before the Court is the parties' Joint Motion for Judicial Review (the "Joint Motion" or "Jt. Mot."). Doc. No. 15. Having considered the arguments of counsel, the applicable law, and the record before it, the undersigned respectfully submits this Report and Recommendation to United States District Judge Thomas J. Whelan pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(d). For the reasons stated herein, the undersigned **RECOMMENDS** that the District Court **AFFIRM** that Commissioner's decision.

///

# I. BACKGROUND

## A. Plaintiff's Application for Benefits

Plaintiff is a 57-year-old female who suffers from fibromyalgia, back pain, knee pain, numbness and tingling in her hands, anxiety and depression. She alleges that these conditions prevent her from working. *See generally* Doc. No. 1. On February 12, 2019, plaintiff applied for disability insurance benefits and supplemental social security income. Certified Administrative Record ("AR") at 15.[1] In both applications, she alleged a disability onset date of September 2, 2018. *Id.* Her application was denied at the initial stage and upon reconsideration. *Id.* At her request, plaintiff was given a hearing before an administrative law judge ("ALJ"), which took place on July 27, 2020 and at which plaintiff appeared with counsel. *Id.* at 31-55. In a decision dated September 28, 2020, the ALJ concluded that plaintiff was not disabled within the meaning of the Social Security Act. *Id.* at 25. The Appeals Council denied review of the ALJ's decision on February 10, 2021, and the decision became final on that date. *Id.* at 1.

## B. Summary of the ALJ's Findings

The Administration employs a sequential five-step evaluation to determine whether a claimant is eligible for benefits under the Social Security Act (the "Act").[2] ALJ Jay Levine, who adjudicated plaintiff's claim, followed this five-step process in rendering his decision. *See generally* AR at 18-24. At Step One, the ALJ found plaintiff did not engage

---

[1] The Court adopts the parties' pagination of the AR. All other record citations are to the page numbers generated by the Court's CM/ECF system.

[2] First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.*, § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant suffers from a "severe" impairment within the meaning of the regulations. *Id.*, § 404.1520(a)(4)(ii). Third, if the claimant suffers from a severe impairment, the ALJ must determine whether that impairment meets or is medically equal to one of the impairments identified in the regulations' Listing of Impairments. *Id.*, § 404.1520(a)(4)(iii). Fourth, if the impairment does not meet or equal a listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.*, § 404.1520(a)(4)(iv). At the fifth step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.*, § 404.1520(a)(4)(v).

in substantial gainful activity from the alleged date of the onset of plaintiff's disability through the date of the ALJ's decision. *Id.* at 18.

At Step Two, the ALJ found that plaintiff had the following severe physical impairments: fibromyalgia, obesity, and degenerative disc disease of the lumbar spine. *Id.* The ALJ further found that these medically determinable impairments "significantly limit [plaintiff's] ability to perform basic work activities." *Id.* However, the ALJ found that plaintiff's alleged impairment of weakness, tingling and poor grip strength in her upper extremities was not medically determinable. *Id.* at 19. As to plaintiff's alleged impairments of diabetes mellitus type 2, gastroesophageal reflux disease, asthma and right knee pain, the ALJ found there was not enough evidence that these impairments "cause[d] more than minimal limitations on her ability to perform basic work activities," and deemed them non-severe. *Id.* at 18-19.

Addressing plaintiff's alleged mental impairments, the ALJ determined that her depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder did not alone or in combination "cause more than minimal limitation in [plaintiff's] ability to perform basic mental work activities." *Id.* at 19. In reaching this conclusion, the ALJ evaluated the "four broad functional areas" of mental functioning as defined in the regulations.[3] *Id.* The ALJ considered the results of the May 2019 consultative psychiatric examination and prior administrative medical findings,[4] as well as evidence in the record

---

[3] Also called the "paragraph B criteria," these are: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. *See* 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). The process of determining whether the claimant has a medically determinable mental impairment and evaluating the impact of any such impairment on these functional areas, is sometimes referred to as the "psychiatric review technique." *See Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).

[4] A "prior administrative medical finding" is "a finding, other than the ultimate determination about whether [the claimant] [is] disabled, about a medical issue" by an agency medical consultant at a prior level of review "based on their review of the evidence in [the] case record." *See* 20 C.F.R. § 404.1513(a)(5). Prior administrative medical findings are evaluated by the same standards as medical opinions. *See id.*, § 404.1520c(a).

of plaintiff's mental health treatment and her testimony regarding her symptoms and limitations. *Id.* at 19- 20. Based upon his consideration of the evidence, the ALJ concluded that plaintiff's medically determinable mental impairments were non-severe, because they caused no more than "mild" limitations in the functional areas and no more than "minimal" limitation in her ability to do work activities. *Id.* at 20.

At Step Three, the ALJ found that plaintiff's impairments, whether alone or in combination, did not meet or medically equal one of the impairments listed in the Commissioner's Listing of Impairments. *Id*.

Proceeding to Step Four, the ALJ found that plaintiff "has the residual functional capacity to perform light work . . . except: climbing, kneeling, crouching [can be done] frequent[ly]; occasional stooping; and no forceful gripping or grasping (the kind of force required to open a tight jar lid or to hold a power tool) with either hand." *Id.* at 21. In formulating plaintiff's RFC, the ALJ considered plaintiff's subjective symptoms and limitations and the extent to which the symptoms as alleged were consistent with the objective medical evidence. *Id.* Specifically, the ALJ considered and discussed plaintiff's subjective function report, work history, and daily activities; a third-party function report; and various medical records, including results of diagnostic imaging. *See id.* at 21-22. The ALJ concluded that while plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her subjective assessment of their limiting effects was "not entirely consistent with the medical evidence and other evidence in the record . . .." *Id.* at 22.

The ALJ also took into consideration the medical opinions and prior administrative medical findings in the record. *Id.* at 22. Dr. Sabourin, a consultative orthopedist, opined that plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit, stand and walk six hours in an eight-hour workday; and could climb, kneel, crouch and stoop frequently. *Id.* at 23; *see also id.* at 430-435. The ALJ found this opinion "persuasive," observing that Dr. Sabourin "supported his opinion with the analysis in examination report which included notations of full motor strength, normal sensation and normal gait," but also of "a reduction in range of motion of the cervical . . . and lumbar

spine." *Id.* at 23. The ALJ also found Dr. Sabourin's observations and findings were consistent with other evidence in the record. *Id.*

State agency medical consultants Drs. Kwun and Chu both opined that plaintiff was capable of medium work, with some "non-exertional postural and environmental limitations." *Id.*; *see also id.* at 96, 104. The ALJ found that the consultants' findings were supported but noted that additional evidence that was not available to the consultants "show[ed] the need for additional exertional limitations." *Id.* at 23. Accordingly, he deemed their prior administrative medical findings "not persuasive." *Id.*

Dr. De La Rosa, plaintiff's treating physician, opined that plaintiff could only lift less than ten pounds frequently, and could sit, stand and walk for only ten minutes at a time and for zero hours total in an eight-hour workday. *Id.*; *see also id.* at 876-877. The ALJ stated that although Dr. De La Rosa cited plaintiff's lower back pain and upper extremity paresthesia in support of these restrictions, those findings were either "not connected to a medically determinable impairment" or "not supported by the objective evidence." *Id.* at 23. Therefore, the ALJ found Dr. De La Rosa's opinion "not persuasive." *Id.*

The ALJ concluded his assessment of plaintiff's RFC by "acknowledg[ing]" that plaintiff "is not able to perform work at all exertional levels because of her impairments." *Id.* He further explained that:

> [Plaintiff] suffers from fibromyalgia and lumbar degenerative disc disease that are complicated by her obesity, which limits her exertional capacity to the light level. [Plaintiff] is not able to lift and carry 50 pounds given [her] pain from her fibromyalgia and lumbar spine impairments. Additionally, [plaintiff] is only able to stoop occasionally but is able to frequently climb, kneel, and crouch due to the lack of additional signs in the lower extremities. While there is no medically determinable impairment in [plaintiff's] upper extremities, as discussed above, [plaintiff] has a history of fibromyalgia, which could impact her ability to use her hands for forceful activities.

*Id.* However, the ALJ stated that plaintiff "does not require additional limitations on her work capacity due to the lack of additional signs and findings supporting other severe impairments and more significant limitations on her work capacity." *Id.* The ALJ therefore

determined that plaintiff could return to her past relevant work as a phlebotomist and appointment clerk. *Id.* at 24. In so finding, the ALJ referenced the testimony of the vocational expert that an individual of plaintiff's age, education, work experience and residual functional capacity could perform those jobs. *Id.*

Given his findings at step four, the ALJ did not proceed to step five. *See* 20 C.F.R. § 416.920(f) and (g) (explaining that the claimant's impairments "must prevent" a return to past relevant work; only if this condition is met is it necessary to determine if the claimant can "make an adjustment to any other work"); *id.*, § 404.1520(a)(4)(iv) (same). Based upon the foregoing analysis and findings, the ALJ concluded that plaintiff had not been under a disability since October 31, 2016, the date her application was filed. *Id.* at 24. Accordingly, her application for benefits was denied. *Id.* at 25.

## II. DISPUTED ISSUES

Plaintiff asserts that the ALJ "failed to properly evaluate" Dr. De La Rosa's opinion, and that as a result, the ALJ's RFC determination is erroneous and not supported by substantial evidence. Jt. Mot. at 8-9. As a separate basis for reversal, plaintiff asserts that the ALJ failed to "reconcile[]" his findings as to plaintiff's mental functioning under the Paragraph B criteria with the RFC, "which provides for no limitations to account for plaintiff's mental impairments." *Id.* at 8. Plaintiff requests that the Court vacate the ALJ's decision and remand for further administrative proceedings. *Id.* at 34.

Defendant argues that the ALJ properly evaluated Dr. De La Rosa's opinion in accordance with the "relevant regulations," under which the opinion of a treating physician is not entitled to any particular weight or deference. *Id.* at 16-17. Defendant also disputes that the ALJ was required to incorporate mental-function limitations into the RFC, arguing that because plaintiff's mental impairments were "non-severe" they "[did] not require concrete functional restrictions in an RFC." *Id.* at 28-30. Defendant requests that the Court affirm the "ALJ's well-reasoned and well-supported decision." *Id.* at 34.

///

///

### III. STANDARD OF REVIEW

The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (citation omitted). This Court must review the entire record and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Id*. However, the Court cannot uphold the decision for reasons "not invoke[d]" by the Commissioner. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). The Court may affirm an erroneous decision if the error was harmless, meaning that it "was inconsequential to the ultimate nondisability determination." *Robbins v. Comm'r, Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

### IV. DISCUSSION

**A. The ALJ's RFC Determination Is Sound**

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must consider all evidence, including medical opinions. *See* 20 C.F.R. § 416.920(a)(3). The crux of plaintiff's challenge to the ALJ's determination that she was not disabled is her charge that the ALJ failed to credit the medical opinion of her treating physician, Renato De La Rosa, M.D. in formulating her RFC. *See* Jt. Mot. at 9-14.

As defendant notes, for applications filed after March 27, 2017 – as plaintiff's was – the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinions or prior administrative medical findings, including those from the claimant's treating providers. *See* 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each opinion in relationship to the record. *See* 20 C.F.R. § 404.1527(b) (explaining that "[i]n determining whether [a claimant is] disabled, [the

Administration] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [it] receive[s]"). The "most important factors" the ALJ must consider in doing so are "supportability" (i.e., whether the provider supported his or her opinion with citations to objective findings) and "consistency" (i.e., whether the opinion is consistent with other evidence in the record). 20 C.F.R. § 404.1520c(a); *see also id.* at § 404.1520c(c)(1) and (2) (defining "supportability" and "consistency").

Defendant argues that because "all medical opinions begin on the equal footing under the new regulations," prior Circuit precedent applying the previous regulations' evidentiary hierarchy may be disregarded. *See* Jt. Mot. at 18-19. However, the new regulations explicitly require the ALJ to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions" in his decision. 20 C.F.R. § 404.1520c(b)(2). And, it remains the law that "the ALJ must provide sufficient reasoning" to "permit meaningful review" by the Court. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020). As one court has observed, it is an open question whether the Ninth Circuit's guidance as to the adequacy of an ALJ's reasoning "will meaningfully change" under the new regulations. *Allen T. v. Saul*, No. EDCV 19-1066-KS, 2020 WL 3510871, at *3 (C.D. Cal. June 29, 2020). With these considerations in mind, the Court turns to the ALJ's assessment of Dr. De La Rosa's opinion.

### 1. *The ALJ Properly Considered Dr. De La Rosa's Opinion*

The opinion evidence at issue is a two-page "Physical Impairment Questionnaire" that Dr. De La Rosa filled in and signed on July 20, 2020. *See* AR at 876-77. Therein, Dr. De La Rosa assessed plaintiff as having significant functional limitations. *See id.* Dr. De La Rosa indicated on the questionnaire that plaintiff's diagnoses included "moderate L4-5 degenerative disc disease with low back pain" and "parasthesia,[5] bilateral hands and upper

---

[5] "Paresthesia" refers to a burning or prickling sensation (sometimes called "pins and needles") that is usually felt in the hands, arms, legs, or feet, but can also occur in other parts of the body. *See* National Institute of Health | National Institute of Neurological Disorders and Stroke, *Parasthesia Information*

extremities," which caused symptoms of "severe low back pain," "bilateral lower leg weakness," and "parasthesia [of the] upper extremities." *See id.* at 876. Dr. De La Rosa indicated that as a result of her conditions and symptoms, plaintiff was unable to sit, walk or stand for more than ten minutes at a time and would need to take breaks every ten minutes while working. *See id.* at 876.  Dr. De La Rosa further opined that plaintiff could never lift ten pounds or more, and could use her fingers and hands (for grasping or fine manipulation) for no more than five percent of the day and use her arms (for reaching) for no more than 20 percent of the day.[6] *Id.* at 877. As to whether plaintiff was "physically capable of working an 8-hour day, 5 days a week employment on a sustained basis," Dr. De La Rosa checked the box "No." *Id.*

The ALJ found Dr. De La Rosa's opinion was "not persuasive." *Id.* at 23. He noted that the symptoms identified – i.e., lower back pain, lower leg weakness and parasthesia in the upper extremities – were reflected in Dr. De La Rosa's treatment notes. *Id.* However, the ALJ found the lower extremity deficits described by Dr. De La Rosa were not supported by any objective evidence and further that Dr. De La Rosa's opinion was not consistent with the report of a June 2020 MRI of plaintiff's lumbar spine, which showed only moderate degenerative disc disease and no significant central stenosis. *See id.* (comparing MRI report with Dr. De La Rosa's treatment notes).  The ALJ also found plaintiff's upper extremity parasthesias were not connected to any medically determinable impairment. *Id.*; *see also id*. at 19 (addressing symptoms of numbness, tingling and weakness in plaintiff's upper extremities but finding that these symptoms were not connected to a specific diagnosis or to objective findings from an acceptable medical source). The ALJ therefore

---

*Page*, https://www.ninds.nih.gov/Disorders/All-Disorders/Paresthesia-Information-Page (last visited May 2, 2022).

[6] Dr. De La Rosa indicated that he had treated plaintiff once per month for the preceding five months. *Id.* at 876. On a separate form titled "Onset Date Questionnaire," he opined that plaintiff had the foregoing limitations and restrictions since February 27, 2020. *Id.* at 878.

concluded that Dr. De La Rosa's opinion was "not consistent with the objective medical evidence of record." *Id.*

The Court finds the ALJ adequately addressed the supportability and consistency of Dr. De La Rosa's opinion in the context of the entire record, as required by the regulations. *See* 20 C.F.R. § 404.1520c(b)(2); *id.* at § 404.1527(b). Contrary to plaintiff's statement that the ALJ failed to explain why Dr. De La Rosa's opinion was not persuasive, *see* Jt. Mot. at 12, the ALJ identified the objective evidence that he found conflicted with Dr. De La Rosa's opinion. AR at 23. Furthermore, the ALJ's evaluation of Dr. De La Rosa's opinion is preceded by his detailed review of the record and his assessments of plaintiff's subjective testimony and other opinion evidence in the record. *See id.* at 21-23. The ALJ described in detail those portions of the record that supported his decision and acknowledged the contrary evidence while explaining his reasons for finding that evidence unpersuasive. *Id.* Plaintiff's charge that the ALJ "offer[ed] no analysis" but only "cherry pick[ed]" the evidence (Jt. Mot. at 14) simply ignores the ALJ's thorough and detailed discussion. *See Lewis v. Apfel*, 236 F.3d 503, 513 (9th Cir. 2001) (noting that the ALJ must "discuss and evaluate the evidence that supports his or her conclusion," but is not required to do so under any particular heading).

Plaintiff also asserts that "the evidence of record clearly provides support for Dr. De La Rosa's opined limitations." Jt. Mot. at 14. Plaintiff then identifies facts that arguably support Dr. De La Rosa's opinion, including her long history of pain and objective findings of decreased range of motion, tenderness and antalgic gait. *See id.* But, plaintiff fails to address the contradictory evidence cited by the ALJ, including objective findings, plaintiff's testimony and other opinions and prior administrative medical findings in the record. *See* AR 21-23. Even if (as plaintiff asserts) there is evidence in the record to support Dr. De La Rosa's opinion, the ALJ found that other evidence in the record conflicted with or undermined that opinion. The ALJ's interpretation of the medical evidence, not plaintiff's, is controlling. *See Ford*, 950 F.3d at 1149 (noting that "the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving

ambiguities'") (citation omitted). It is not the role of this Court to "substitute its judgment" for the ALJ's. *Lewis*, 236 F.3d at 509.

### 2. *Substantial Evidence Supports the ALJ's RFC Determination*

Having found that the ALJ's assessment of Dr. De La Rosa's opinion was not the product of legal error, the Court must nevertheless independently assess whether substantial evidence supports the ALJ's RFC determination. *Ahearn*, 988 F.3d at 1115; *see also Webb v. Colvin*, No. 2:12-cv-00592-GMN-PAL, 2013 WL 5947771, at *2 (D. Nev. Nov. 5, 2013) ("[T]he issue before the Court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence."). To that end, the Court has independently reviewed the administrative record, and concludes that substantial evidence supports the ALJ's determination that plaintiff could perform a modified range of light work and his subsequent conclusion that plaintiff was not disabled.

The objective medical evidence confirms plaintiff's fibromyalgia, obesity, and degenerative disc disease of the lumbar spine. *See* AR at 307-09, 322, 439-41, 485, 561, 595, 758, 792, 822-23, 864, 888-889. The record reflects plaintiff's frequent complaints of pain in her back, knee, and upper extremities, which was variously treated with acupuncture, medication, cortisone injections and nerve blocks with varying degrees of effectiveness. *See id*. at 552, 561, 586, 752, 758, 765. Plaintiff reported to providers in 2017 that she engaged in moderate to strenuous exercise for approximately 140 minutes per week. AR at 564, 675. However, she reported in 2018 that she had fallen several times and discontinued exercising for fear of falling again. AR at 323, 741-42.

On May 12, 2017, plaintiff presented to Dr. Yea with complaints of parasthesias and back pain. On examination, she exhibited full range of motion and normal strength. AR at 572-73.

On April 30, 2018, plaintiff was seen by Dr. Watson, a pain management specialist. AR at 765-78. On examination, Dr. Watson noted that plaintiff "display[ed] no overt pain behaviors" and exhibited 5/5 strength and intact sensation in her upper and lower

extremities. *Id*. at 771. She was tender to palpation along the spine and exhibited an antalgic gait. *Id*. Dr. Watson recommended a comprehensive pain management program, additional medications, a program of low impact aerobic exercise after evaluation by a physical therapist, aqua therapy, a trial with a TENS unit, and biofeedback. *Id*. at 320-21, 772, 775.

Progress notes from Dr. De La Rosa dated between June 2019 and January 2020 reflect that plaintiff often complained of back pain, leg pain, fatigue, and tingling and weakness in her hands, yet findings on physical examination were largely normal. *See id*. at 439-48, 482-495. Dr. De La Rosa ordered an x-ray of both hands, which was completed on July 16, 2019 and revealed no abnormal findings. *Id*. at 455, 511.

On May 9, 2019, plaintiff was seen by Dr. Sabourin for an orthopedic consultation. *Id*. at 430-35. On examination, she exhibited reduced grip strength "with questionable effort" on the left side as compared to the right. *Id*. at 431-32. She was able to sit and stand with normal posture and to sit comfortably. *Id*. at 432. She got in and out of her chair and on and off the examination table without difficulty and without the use of assistive devices. *Id*. She exhibited normal gait although she "move[d] slowly." *Id*. Plaintiff's range of motion in her lumbar spine was slightly less than normal, but she exhibited full range of motion of the shoulders, elbows, wrists, fingers and thumb. *Id*. at 432-33. She complained of pain and exhibited tenderness, but Dr. Sabourin did not observe any swelling in her upper extremities or back. *Id*. Her range of motion in her hips and feet was grossly normal, and in her knees and ankles less than normal. *Id*. at 433. Plaintiff complained of tenderness, but again Dr. Sabourin did not observe any swelling. *Id*. She exhibited normal motor strength and normal sensation to touch. *Id*. at 434.

Dr. De La Rosa's progress note dated June 2, 2020 documents plaintiff's subjective complaints of chronic pain and limitations with "prolonged" sitting and standing, but there were no objective findings at this visit as it was conducted by video. *Id*. at 861-864. Dr. De La Rosa ordered an MRI of plaintiff's lumbar spine, which was conducted on June 29, 2020. *Id*. at 872-73. The results of this imaging study showed moderate degenerative disc

disease at L4-5 with no significant central stenosis. *Id*. There were no significant findings at any other lumbar disc level. *Id.*

Dr. De La Rosa's progress notes dated July 13, 2020 reflect continued complaints of back pain and bilateral weakness and tingling in both hands. *Id.* at 880-83. On examination, there were no objective neurological findings; plaintiff exhibited mild weakness of her upper right arm and mild poor grip on the left. *Id.* Dr. De La Rosa documented the findings from the June 29, 2020 lumbar spine MRI and, consistent with those findings, diagnosed plaintiff with moderate degenerative disc disease at the L4-5 level. *Id.* One week later, on July 20, 2020, plaintiff was seen again by Dr. De La Rosa. *Id.* at 885-889. She complained again of back pain and tingling and weakness in her upper extremities. *Id*. Physical examination again revealed no objective neurological findings, but plaintiff was noted to have mild right-sided weakness, "but good grip compared with the left." *Id.* at 888.

Plaintiff reported in her Function Report that she lives alone, and can prepare simple meals, take care of her dogs, do laundry and dishes, and drive a car. *Id*. at 224-231. A third-party function report likewise confirmed that plaintiff takes care of her dogs, does "basic household chores" and can prepare food so long as it "does not require the use of a knife. *Id*. at 235-242.

The Court finds the foregoing is relevant and substantial evidence that is adequate to support the ALJ's determination that Dr. De La Rosa's opinion is inconsistent with both the objective medical evidence, taken as a whole, and plaintiff's self-reported ability to perform daily activities. The Court further finds this substantial evidence also supports the ALJ's conclusion that plaintiff was not disabled.

For the above reasons, the Court finds that the ALJ applied the correct legal standard in evaluating Dr. De La Rosa's opinion, and that he adequately explained his reasons for finding that opinion unpersuasive. The Court further finds that the ALJ's RFC, and subsequent determination that plaintiff is not disabled, is supported by substantial evidence. The Court therefore **RECOMMENDS** that plaintiff's request for remand on this basis be **DENIED**.

**B. The ALJ Did Not Err by Not Including Mental Limitations in the RFC**

As a separate basis for reversal, plaintiff asserts that the ALJ further erred by failing to "reconcile" his findings regarding plaintiff's psychiatric conditions with the RFC, "which provides for no limitations to account for plaintiff's mental impairments." Jt. Mot. at 26. Plaintiff acknowledges that the ALJ found her mental limitations "non-severe," but asserts that he was nevertheless required to "address whether or not those limitations would further impact plaintiff's RFC for light work." *Id.* at 27. Plaintiff states that the "Social Security Regulations explicitly state [that] the findings in the [psychiatric review] need to be considered in the RFC." *See id.* (citing 20 C.F.R. §§ 404.1520a(d)(3) and 416.920a(c)(3)).

The Court agrees that the regulations require the ALJ to consider the limiting effects of all impairments, including those which are non-severe. Yet, as one court has explained, "[c]onsideration of 'the limiting effects of all impairments' does not necessarily require the *inclusion* of every impairment into the final RFC if the record indicates the non-severe impairment does not cause a significant limitation in the plaintiff's ability to work." *Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016) (rejecting similar argument as a misapprehension of the regulations) (emphasis in original). Plaintiff's contrary position is not supported by a plain reading of the regulations, which require the ALJ to "document application of the [psychiatric review] technique in [his] decision." 20 C.F.R. § 404.1520a(d). The text goes on to state that:

> the [ALJ's] written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

*Id.* at § 404.1520a(d)(4). The Ninth Circuit has explained that these regulations "contemplate that written decisions [by] the ALJ . . . should contain a 'narrative rationale'"

///

regarding a claimant's mental impairments and limitations. *Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).

Here, the ALJ documented his application of the psychiatric review technique and made a specific finding as to plaintiff's degree of limitation in each functional area. *See* AR at 19-20. He determined that plaintiff had the following medically determinable mental impairments: depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. *Id.* at 19. He discussed the findings by Dr. Nicholson, the consultative psychiatrist, that plaintiff "would be no more than mildly limited" by her alleged impairments, as well as the prior administrative findings by Drs. Bergmann-Harris and Caruso-Radin, who both concluded that plaintiff's mental impairments were non-severe. *Id.* at 20. The ALJ found the opinions and prior administrative findings of Drs. Nicholson, Bergmann-Harris and Caruso-Radin "consistent with the totality of the evidence" and therefore "persuasive." *Id.* The ALJ also considered plaintiff's historical mental health treatment, which displayed "little evidence of a comprehensive mental status examination showing [plaintiff's] functioning in relevant areas." *Id*. He also found it significant that plaintiff's alleged mental impairments "long predate[d] the current period," but she was nevertheless able to work despite her symptoms and with little evidence that she required treatment, and indeed had not sought treatment for her mental health conditions until June 2020. *Id*. Ultimately, the ALJ determined that plaintiff's mental impairments caused no limitations in the four "paragraph B" areas of mental functioning and were "non-severe." *See id.* The Court finds this satisfied both the regulations and the Ninth Circuit's "narrative rationale" requirement. *See* § 404.1520a(d)(4); *Keyser*, 648 F.3d at 725.

The Court also notes that the ALJ explicitly stated at Step Two that his RFC "reflects the degree of limitation" he found as a result of the psychiatric review technique. AR at 20. Plaintiff complains that this statement was "boilerplate," Jt. Mot. at 27, but that argument ignores the detailed review of the evidence that precedes it. The regulations require discussion and evaluation, which the ALJ satisfactorily provided here by "rating and assessing [plaintiff's] limitations in each of the[] four functional areas." *See Hoopai v.*

*Astrue*, 499 F.3d 1071, 1078 (9th Cir. 2007). He was not required to do more. *See id.* (affirming ALJ's decision); *see also Phillips v. Colvin*, 61 F. Supp. 3d 925, 940 (N.D. Cal. 2014) (explaining that a "difficulty" in one of the four functional areas "does not automatically translate to an RFC finding with these limitations" because "the relevant inquiry is whether the medical evidence supports a particular RFC finding"); *Kimberley A. v. Kijakazi*, No. 2:20-cv-01802-SB, 2022 WL 19203, at *6 (D. Or. Jan. 3, 2022) (finding that "the ALJ was not required to incorporate [p]laintiff's Paragraph B criteria in the RFC").[7]

Plaintiff cites the unpublished Ninth Circuit decision in *Hutton v. Astrue*, 491 Fed. App'x 850 (9th Cir. 2012), for the proposition that the ALJ could not "disregard his own findings." *See* Jt. Mot. at 27. In *Hutton*, the ALJ refused to consider a claimant's post-traumatic stress disorder based on a finding that the claimant was not credible. 491 Fed. App'x at 850. The Ninth Circuit found that "[t]his exclusion was legal error," and reversed. *Id.* Here, in contrast, the ALJ addressed plaintiff's depression, anxiety and post-traumatic stress disorder at Step Two, found that her mild impairments caused no functional limitations, and explicitly incorporated those findings into the RFC. *See* AR at 19-20. The Court therefore finds *Hutton* is distinguishable and does not require remand on the facts of this case.

Finally, the Court is not persuaded that the alleged error caused any harm. As noted, the ALJ found that plaintiff's mental impairments caused "*no limitation* in understanding,

---

[7] Moreover, numerous courts in this Circuit have found that an ALJ may properly incorporate the findings from the psychiatric review technique into the RFC by reference, as the ALJ did here. *See Webb*, 2013 WL 5947771, at **12-13; *see also, e.g.*, *Nabil I. v. Saul*, No. 2:18-06294 ADS, 2020 WL 1332086, at *6 (C.D. Cal. Mar. 23, 2020) (rejecting similar argument where the ALJ "analyzed [p]laintiff's mental health condition in a highly detailed analysis immediately before fashioning the RFC" and collecting cases); *Thompson v. Saul*, No. 1:18-cv-00137-BAM, 2019 WL 3302471, at *7 (E.D. Cal. 2019) (finding on similar facts that the ALJ properly "considered" the claimant's non-severe mental impairments where he "conclude[d] that those non-severe mental impairments did not necessitate [the] inclusion of any mental limitations in the RFC"); *Ball v. Colvin*, No. CV 14-2110-DFM, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) (finding, on similar facts, that "the record shows that the ALJ did consider [p]laintiff's mild mental limitations in formulating her RFC").

remembering or applying information; *no limitation* in interacting with others; *no limitation* in concentrating, persisting or maintaining pace; and *no limitation* in adapting or managing oneself." AR at 20 (emphasis added). Given these explicit findings, the Court cannot agree with plaintiff that "additional mental limitations would further erode the occupational base and potentially eliminated [sic] [p]laintiff's ability to perform" her past work as a phlebotomist or appointment clerk. Jt. Mot. at 27.

For these reasons, the Court finds the ALJ did not err by not including functional limitations in plaintiff's RFC based on her mild mental impairments and **RECOMMENDS** that plaintiff's request for reversal and remand on this basis be **DENIED**.

## RECOMMENDATION and ORDER

For the reasons stated herein, the Court finds that the ALJ applied the correct legal standards and that his determination that plaintiff is not disabled is supported by substantial evidence. Therefore, **IT IS HEREBY RECOMMENDED** that the District Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) denying plaintiff's request for remand; (3) affirming the decision of the Commissioner; and (4) directing that judgment be entered in defendant's favor.

**IT IS HEREBY ORDERED** that any objections to this Report and Recommendation must be filed no later than *<u>May 27, 2022</u>* and that responses to any objections must be filed no later than *<u>June 6, 2022</u>*. The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated: May 3, 2022

Hon. Karen S. Crawford
United States Magistrate Judge