UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VIRGINIA ESTELLE G.,<br><br>                                   Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>                                   Defendant. | Case No.:  21-cv-00674-W-KSC<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION [DOC. 16] AND (2) AFFIRMING THE COMMISSIONER'S DECISION** |

Plaintiff Virginia Estelle G. ("Plaintiff") filed this lawsuit on April 15, 2021. The lawsuit challenges the Commissioner's July 27, 2020 decision that concluded that Plaintiff was not disabled within the meaning of the Social Security Act and denied her application for disability benefits.

On April 6, 2022, the parties filed a Joint Motion for Judicial Review ("*Joint Motion*").  On May 4, 2022, the Honorable Karen S. Crawford, United States Magistrate

Judge, issued a Report and Recommendation ("*Report*") recommending that this Court affirm the Commissioner's decision. The Court decides the matter on the papers submitted and without oral argument. *See* Civ. L.R. 7.1(d.1). For the reasons outlined below, the Court **ADOPTS** the Report [Doc. 16] in its entirety and **AFFIRMS** the Commissioner's decision.

I.     **BACKGROUND**

On February 12, 2019, Plaintiff applied for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income, alleging disability beginning September 2, 2018 due to fibromyalgia, back problems, neck problems, anxiety disorder, and depression. (*Administrative Record ("A.R.")* [Doc. 10] at 15, 21.)[1] The Social Security Administration ("SSA") denied both applications on initial review and upon reconsideration. (*Id.* at 15.) Plaintiff then filed a written request for a hearing pursuant to 20 CFR 404.929 *et seq.* and 416.1429 *et seq.* (*Id.*) On July 27, 2020, Administrative Law Judge ("ALJ") Jay Levine conducted an administrative hearing. (*Id.* at 31-55.) The ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act (the "Act") from September 2, 2018 through the date of the decision, September 28, 2020. (*Id.* at 15-25.)

In his decision, ALJ Levine found that: (1) Plaintiff meets the insured status requirements through December 21, 2023, (2) Plaintiff has not engaged in substantial activity since September 2, 2018, the alleged onset date, (3) Plaintiff has the following severe impairments: fibromyalgia; obesity; and degenerative disc disease of the lumbar spine, (4) Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404 P, Appendix 1, (5) Plaintiff has the residual functional capacity to perform a range of

---

[1] The administrative record is filed on the Court's docket as multiple attachments. The Court will cite to the administrative record using the page references contained on the original document rather than the page numbers designated by the Court's case management/electronic case filing system ("CM/ECF"). For all other documents, the Court cites to the page numbers affixed by CM/ECF.

light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b) except: climbing, kneeling, crouching is frequent; occasional stooping; and no forceful gripping or grasping (the kind of force required to open a tight jar lid or to hold a power tool) with either hand, and (6) Plaintiff was capable of performing her past relevant work as a phlebotomist and appointment clerk.  (*Id.* at 18, 20-21, 24.)  Based on these findings, ALJ Levine determined that Plaintiff has not been under a disability, as defined in the Act, from September 2, 2018 through the date of the decision.  (*Id.* at 24.)

The ALJ's decision became final on February 10, 2021 when the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1.)  Plaintiff thereafter filed the present action challenging the Commissioner's decision.  (*Compl.* [Doc. 1].)  On April 6, 2022, the parties filed a Joint Motion for Judicial Review ("*Joint Motion*").  (*Joint Motion* [Doc. 15].)  On May 4, 2022, United States Magistrate Judge Karen S. Crawford issued a Report recommending that this Court affirm the Commissioner's decision.  (*Report* [Doc. 16].)  Plaintiff filed an objection to the Magistrate Judge's Report ("*Obj. to the Report*" [Doc. 17]) on May 13, 2022 and Defendant filed its response to the objection on June 2, 2022 ("*Response*" [Doc. 19]).

## II.   LEGAL STANDARD

To qualify for disability benefits under the Social Security Act, a claimant must show: (1) that she suffers from a medically determinable physical or mental impairment that can be expected to result in death or that either has lasted, or can be expected to last, for a continuous period of 12 or more months; and (2) that as a result of such inability, the claimant is incapable of performing any substantial gainful work existing in the national economy.  42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).

The Commissioner determines whether a claimant qualifies for disability pursuant to a sequential five-step process.  20 C.F.R. § 404.1520(a)(4).

First, the Commissioner determines whether the claimant is engaged in any substantially gainful activity.  20 C.F.R. § 404.1520(b).  If so, the claimant is not

disabled.  *Id.*

Second, the Commissioner determines the medical severity of the claimant's condition and its duration relative to the twelve-month requirement of 20 C.F.R. § 404.1509.  20 C.F.R. § 404.1520(c).  If the claimant does not have "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities[,]" then the claimant is not disabled.  *Id.*

Third, the Commissioner determines whether the claimant's condition meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpart P, App. 1.  20 C.F.R. § 404.1520(d).  If so, then the claimant is disabled; if not, then the Commissioner proceeds to the next step.  *Id.*

Fourth, the Commissioner makes a finding of "residual functional capacity," ("RFC") an assessment of the claimant's condition that is used to determine whether the condition renders her unable to work.  20 C.F.R. §§ 404.1520(e)–(f), 416.945.  If the claimant can do work that she has done in the past, then she is not disabled.  *Id.*  If the claimant cannot do such work, the analysis proceeds to the fifth step.

Fifth and finally, the Commissioner uses the above RFC assessment and vocational factors (the claimant's age, education, and work experience) to determine if the claimant is able to do any other substantially gainful work existing in the national economy.  20 C.F.R. § 404.1520(g); 42 U.S.C. §§ 423(d)(1)(A), (d)(2)(A).  If she is able to do other work, she is not disabled.  If not, then she is disabled.

The Court may set aside a denial of benefits "only if it is not supported by substantial evidence or if it is based on legal error."  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002)).  "The claimant carries the initial burden of proving a disability."  *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)).  "Substantial evidence means 'such relevant evidence as a reasonable mind would accept as adequate to support a conclusion.'"  *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987) (quoting *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986)).

When a magistrate judge issues a report and recommendation as to a dispositive motion, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

### III. DISCUSSION

Having read and considered the papers submitted, including Plaintiff's objections to the Report, the Court concludes the Report presents a well-reasoned analysis of the issues. The Report correctly concluded that the ALJ's decision was supported by substantial evidence and that the decision should be affirmed.

The ALJ applied the five-step process outlined above. At Step One, the ALJ found that Plaintiff did not engage in gainful activity from the alleged date of the onset of Plaintiff's disability through the date of the ALJ's decision. (*A.R.* at 18.)

At Step Two, the ALJ found that Plaintiff had the following severe physical impairments: fibromyalgia; obesity; and degenerative disc disease of the lumbar spine, which "significantly limit[ed] [Plaintiff's] ability to perform basic work activities[.]" (*Id.*) The ALJ further found that Plaintiff's alleged impairment of weakness, tingling and poor grip strength in her upper extremities was not medically determinable. (*Id.* at 19.) As to Plaintiff's alleged impairments of diabetes mellitus type 2, gastroesophageal reflux disease, asthma and right knee pain, the ALJ found there was "a lack of evidence" that these impairments "cause[d] more than minimal limitations on her ability to perform basic work activities" and deemed them non-severe. (*Id.* at 18-19.) The ALJ also considered Plaintiff's "medically determinable mental impairments" at Step Two, finding that Plaintiff's impairments of depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder did not alone or in combination "cause more than minimal limitation in [Plaintiff's] ability to performed basic mental work activities." (*Id.* at 19.) In reaching this conclusion, the ALJ evaluated the "four broad functional areas" of

mental functioning as defined in the regulations.[2] (*Id.*) The ALJ considered the results of the May 2019 consultative psychiatric examination and prior administrative medical findings,[3] as well as evidence in the record of Plaintiff's mental health treatment and her testimony regarding her symptoms and limitations. (*Id.* at 19-20.) Based upon his consideration of the evidence, the ALJ concluded that Plaintiff's medically determinable mental impairments were non-severe, because they caused no more than "mild" limitations in the functional areas and no more than "minimal" limitation in her ability to do work activities. (*Id.* at 20.)

At Step Three, the ALJ found that plaintiff's impairments, whether alone or in combination, did not meet or medically equal one of the impairments listed in the Commissioner's Listing of Impairments. (*Id.*)

At Step Four, the ALJ formulated Plaintiff's RFC to determine whether the condition renders her unable to work. (*Id.* at 21.) The ALJ found that Plaintiff "has the residual functional capacity to perform light work . . . except: climbing, kneeling, crouching [can be done] frequent[ly]; occasional stooping; and no forceful gripping or grasping (the kind of force required to open a tight jar lid or to hold a power tool) with either hand." (*Id.*) In making this finding, the ALJ considered Plaintiff's subjective symptoms and limitations and the extent to which the symptoms as alleged were consistent with the objective medical evidence. (*Id.*) Specifically, the ALJ considered

---

[2] Also called the "paragraph B criteria," these are: understanding, remembering, and applying information; interacting with others; concentrating, persisting, and maintaining pace; and adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3) and 416.920a(c)(3). The process of determining whether the claimant has a medically determinable mental impairment and evaluating the impact of any such impairment on these functional areas, is sometimes referred to as the "psychiatric review technique." *Keyser v. Comm'r, Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011).

[3] A "prior administrative medical finding" is "a finding, other than the ultimate determination about whether [the claimant] [is] disabled, about a medical issue" by an agency medical consultant at a prior level of review "based on their review of the evidence in [the] case record." 20 C.F.R. § 404.1513(a)(5). Prior administrative medical findings are evaluated by the same standards as medical opinions. *Id.*, § 404.1520c(a).

and discussed plaintiff's subjective function report, work history, and daily activities; a third-party function report; and various medical records, including results of diagnostic imaging. (*See id.* at 21-22.) The ALJ concluded that while Plaintiff's impairments could reasonably be expected to cause her alleged symptoms, her subjective assessment of their limiting effects was "not entirely consistent with the medical evidence and other evidence in the record . . . ." (*Id.* at 22.)

The ALJ also considered the medical opinions and prior administrative medical findings in the record. (*Id.* at 22.) Dr. Sabourin, a consultative orthopedist, opined that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; could sit, stand and walk six hours in an eight-hour workday; and could climb, kneel, crouch and stoop frequently. (*Id.* at 23; *see also id.* at 430-435.) The ALJ found this opinion "persuasive," observing that Dr. Sabourin "supported his opinion with the analysis in examination report which included notations of full motor strength, normal sensation and normal gait," but also of "a reduction in range of motion of the cervical . . . and lumbar spine." (*Id.* at 23.) The ALJ also found Dr. Sabourin's observations and findings were consistent with other evidence in the record. (*Id.*)

State agency medical consultants Drs. Kwun and Chu both opined that Plaintiff was capable of medium work, with some "non-exertional postural and environmental limitations." (*Id.*; *see also id.* at 96, 104.) The ALJ found that the consultants' findings were supported but noted that additional evidence that was not available to the consultants "show[ed] the need for additional exertional limitations." (*Id.* at 23.) Accordingly, he deemed their prior administrative medical findings "not persuasive." (*Id.*)

Dr. De La Rosa, Plaintiff's treating physician, opined that Plaintiff could only lift less than ten pounds frequently and could sit, stand, and walk for only ten minutes at a time and for zero hours total in an eight-hour workday. (*Id.*; *see also id.* at 876-877.) The ALJ stated that although Dr. De La Rosa cited Plaintiff's lower back pain and upper extremity paresthesia in support of these restrictions, those findings were either "not

connected to a medically determinable impairment" or "not supported by the objective evidence." (*Id.* at 23.) Therefore, the ALJ found Dr. De La Rosa's opinion "not persuasive." (*Id.*)

The ALJ concluded his assessment of plaintiff's RFC by "acknowledg[ing]" that plaintiff "is not able to perform work at all exertional levels because of her impairments." (*Id.*) He further explained that:

> [Plaintiff] suffers from fibromyalgia and lumbar degenerative disc disease that are complicated by her obesity, which limits her exertional capacity to the light level. [Plaintiff] is not able to lift and carry 50 pounds given [her] pain from her fibromyalgia and lumbar spine impairments. Additionally, [Plaintiff] is only able to stoop occasionally but is able to frequently climb, kneel, and crouch due to the lack of additional signs in the lower extremities. While there is no medically determinable impairment in [Plaintiff's] upper extremities, as discussed above, [plaintiff] has a history of fibromyalgia, which could impact her ability to use her hands for forceful activities.

(*Id.*) However, the ALJ stated that Plaintiff "does not require additional limitations on her work capacity due to the lack of additional signs and findings supporting other severe impairments and more significant limitations on her work capacity." (*Id.*) The ALJ therefore determined that Plaintiff could return to her past relevant work as a phlebotomist and appointment clerk, citing as support the testimony of the vocational expert that an individual of plaintiff's age, education, work experience and residual functional capacity could perform those jobs. (*Id.* at 24.)

Given his findings at Step Four, the ALJ did not proceed to Step Five. *See* 20 C.F.R. § 416.920(f) and (g) (explaining that the claimant's impairments "must prevent" a return to past relevant work; only if this condition is met is it necessary to determine if the claimant can "make an adjustment to any other work"); *id.*, § 404.1520(a)(4)(iv) (same). Based upon the foregoing analysis and findings, the ALJ concluded that Plaintiff had not been under a disability since October 31, 2016, the date her application was filed. (*Id.* at 24.) Accordingly, the ALJ denied her application for benefits. (*Id.* at 25.)

Plaintiff argues that the ALJ's decision should be vacated for two separate reasons.

First, Plaintiff asserts that the ALJ "failed to properly evaluate" Dr. De La Rosa's opinion, and that as a result, the ALJ's RFC determination is erroneous and not supported by substantial evidence. (*Joint Motion* at 8-9.)  Second, Plaintiff asserts that the ALJ failed to "reconcile[]" his findings as to plaintiff's mental functioning under the Paragraph B criteria with the RFC, "which provides for no limitations to account for plaintiff's mental impairments." (*Id.* at 8.)  For the reasons explained below and stated in the Report, the Court disagrees.

### A. The ALJ's RFC Determination.

"The ALJ is responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015). In doing so, the ALJ must consider all evidence, including medical opinions. *See* 20 C.F.R. § 416.920(a)(3).  The ALJ is required to "explain how [he] considered the supportability and consistency factors for a medical source's medical opinions[.]" 20 C.F.R. § 404.1520c(b)(2).  For applications filed after March 27, 2017—as Plaintiff's was—the ALJ is no longer required to defer or give any specific evidentiary weight to any medical opinions or prior administrative medical findings, including those from the claimant's treating providers. *See* 20 C.F.R. § 404.1520c(a).  Instead, the ALJ must evaluate the persuasiveness of each opinion in relationship to the record. *See* 20 C.F.R. § 404.1527(b) (explaining that "[i]n determining whether [a claimant is] disabled, [the Administration] will always consider the medical opinions in [the] case record together with the rest of the relevant evidence [it] receive[s]").  The "most important factors" the ALJ must consider in doing so are "supportability" (i.e., whether the provider supported his or her opinion with citations to objective findings) and "consistency" (i.e., whether the opinion is consistent with other evidence in the record).  20 C.F.R. § 404.1520c(a); *see also id.* at § 404.1520c(c)(1) and (2) (defining "supportability" and "consistency").

Plaintiff argues that the ALJ's determination is erroneous because the ALJ did not properly evaluate the opinion of Plaintiff's treating physician, Renato De La Rosa, M.D. (*See Joint Motion* at 8-9; *Obj. to Report* at 2-3.)  The Court disagrees.  As explained in

1  the Report, the ALJ assessed Dr. De La Rosa's opinion and explained how he considered
2  the opinion in context of the entire record.  The ALJ evaluated Dr. De La Rosa's opinion
3  and found that it was "not persuasive" and "not consistent with the objective medical
4  evidence of record." (*A.R.* at 23.)  The Court additionally agrees with the Magistrate
5  Judge's finding that the ALJ adequately addressed the "supportability and consistency of
6  Dr. De La Rosa's opinion in the context of the entire record, as required by the
7  regulations." (*Report* at 10.)
8      The "ALJ 'is responsible for determining credibility, resolving conflicts in medical
9  testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir.
10 2020) (citation omitted). Even if there is evidence in the record to support Dr. De La
11 Rosa's opinion, the ALJ found that other evidence in the record conflicted with or
12 undermined that opinion. As the Magistrate Judge noted, the ALJ identified the objective
13 evidence that he found conflicted with Dr. De La Rosa's opinion. (*A.R.* at 23.)  The
14 ALJ's decision included a detailed review of the record and his assessments of Plaintiff's
15 subjective testimony and other opinion evidence in the record. (*Id.* at 21-23.)  The ALJ
16 described in detail those portions of the record that supported his decision and
17 acknowledged the contrary evidence while explaining his reasons for finding that
18 evidence unpersuasive. (*Id.*)  And the ALJ considered the supportability and consistency
19 of Dr. De La Rosa's opinion, noting that the notations made in the July 2020
20 questionnaire were "supported by the treatment notes from Dr. De La Rosa." (*A.R.* at
21 23.)
22     The Court agrees with the Report's conclusion that substantial evidence supports
23 the ALJ's RFC determination and adopts the analysis.
24     **B.     The ALJ's Analysis of Plaintiff's Mental Limitations.**
25     Plaintiff additionally argues that the ALJ erred by failing to "reconcile" his
26 findings regarding plaintiff's psychiatric conditions with the RFC, "which provides for no
27 limitations to account for plaintiff's mental impairments." (*Joint Motion* at 26; *Obj. to*
28 *Report* at 3-4.)  For the reasons stated in the Report, the Court disagrees.

Plaintiff objects to this conclusion by the Magistrate Judge, arguing that "the ALJ filed to explain why additional mental limitations were not appropriate once he concluded that Plaintiff had mild impairment in all four domains." (*Obj. to Report* at 4.) As Defendant points out, it is not correct that the ALJ found Plaintiff suffered mild limitations in all four functional areas of the psychiatric review technique. The Magistrate Judge correctly noted that the ALJ found that Plaintiff's mental impairments caused "*no limitation* in understanding, remembering or applying information; *no limitation* in interacting with others; *no limitation* in concentrating, persisting or maintaining pace; and *no limitatio*n in adapting or managing oneself." (*A.R.* at 20 (emphasis added).) Since Plaintiff's objection is born of this misreading of the evidence, this objection fails.

The Magistrate Judge correctly concluded that the ALJ did not err by not including functional limitations in Plaintiff's RFC based on her mild mental impairments.

IV. **CONCLUSION & ORDER**

For the foregoing reasons, the Court **ORDERS** as follows:

    (1) the Report [Doc. 16] is **ADOPTED** in its entirety;

    (2) Plaintiff's request for remand is **DENIED**;

    (3) the Commissioner's decision is **AFFIRMED**;

    (4) judgement is to be entered in Defendant's favor.

**IT IS SO ORDERED.**

Dated: October 20, 2022

_____
Hon. Thomas J. Whelan
United States District Judge